NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSHUA KYLE CUNNINGTON, *Appellant.*

No. 1 CA-CR 25-0380

FILED 07-20-2026

Appeal from the Superior Court in Maricopa County
CR2024-111643-001
The Honorable Utiki Spurling Laing, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Grahame McNevin
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jacob R. Lines
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Judge Andrew J. Becke joined.

---

**B R O W N**, Judge:

**¶1**        Joshua Cunnington appeals from his convictions and sentences for two counts of aggravated driving under the influence, arguing the jury was tainted by knowledge that Cunnington had rejected a plea offer.  For the following reasons, we affirm.

## BACKGROUND

**¶2**        The State charged Cunnington with two counts of aggravated driving under the influence, in violation of A.R.S. §§ 28-1381(1), (2), -1383(A)(4).  On the first day of trial, during jury selection but outside the presence of the potential jurors, the State placed on the record that it had extended a plea offer to Cunnington whereby he would plead guilty to one count, with a sentencing range of six to ten years' imprisonment.  Without the plea, he faced at least ten years on each count.  Cunnington rejected the offer, and the superior court resumed voir dire.

**¶3**        After a round of preliminary questions, the court asked the prospective jurors generally if they needed to bring anything to the court's attention.  Juror 19 raised their card and explained they and other jurors had overheard a discussion in the hallway between Cunnington, his mother, and his attorney about taking a plea.  The court removed the jurors from the courtroom, and Cunnington's counsel explained that she and Cunnington had been at the end of the hallway around a corner.  Defense counsel stated she had discussed "options" with Cunnington, but there was neither yelling nor heightened voices.  The court spoke with Juror 19, outside the presence of the other jurors, who clarified they had heard Cunnington's mother yelling during the conversation, telling Cunnington to "just take the plea, take the plea; otherwise, I'm going to see you in, like, 15 years."  Juror 19 said they were unsure if they could remain impartial, and that some other jurors may have also heard portions of the conversation.  The court then struck Juror 19 for cause.

¶4 Next, the court questioned several potential jurors individually as to what, if anything, they heard about this conversation in the hallway, beginning with those whose questionnaires raised unrelated issues. After addressing the questionnaires, the jurors were asked about the hallway conversation. The court struck two more jurors based on what they recalled overhearing. These jurors explained their recollection of the discussion as follows:

- Juror 14 said, "[i]t sounded like suggesting a plea being taken, and that that wasn't going well. And then I assume a mother, perhaps, was involved in the initial conversation, and she walked past upset and saying something like 'I'll see you in 10 or 15 years and shake my hand' maybe, something along those lines."

- Juror 13 stated, "I heard talk of a plea. I heard talk of 15 years, and it sounded like a disagreement between the two of you, and there was another lady that seemed very upset."

The court struck both jurors because they had learned of a specific sentence Cunnington could receive if convicted.

¶5 The court did not strike the following jurors:

- Juror 20 said, "I could tell there was tension between his attorney and his family. I did hear the word "plea," but that's about all I could really make out. I could just tell that there [were] words being spoken." The juror denied hearing any of this conversation would impact their impartiality.

- Juror 8 stated, "I mostly heard mumbling. I heard, like, tone, like, the tones of people. And then, obviously, I saw—I'm presuming—the mother crying, but that's it. I can only assume, but it was a bad conversation going on." When asked if overhearing that conversation would affect their view of the evidence, Juror 8 said, "I don't think so."

- Juror 4 reported that they heard "just the last part about the lady with the defendant saying she'll be dead by the time he gets out, something to that effect," but they did not remember the exact words used. After

first being asked whether this would affect their ability to be on the jury, Juror 4 stated, "I would think so, because I would assume that he will take a plea." The court explained to Juror 4 that Cunnington would be unable to take the plea and proceed to trial at the same time. After the court's explanation, Juror 4 denied that this information would jeopardize their ability to remain impartial and confirmed that they would follow any instructions from the court prohibiting them from considering any penalty when making a decision as a juror.

- Juror 11 told the court "it was very loud, very emotional, the mother was asking the defendant to take the plea. And she kept walking in front of us, very obviously upset and crying, and I did hear some words exchanged between the defendant and his mother in front of us." The juror clarified they "didn't hear his response, but the mother said 'okay, I will shake your hand and when you get out you can bury me." Juror 11 told the court they could be fair and impartial despite hearing this conversation.

- Juror 17 could not recall any specifics, only that they heard "[j]ust the emotional outburst of something about taking or not taking a plea deal"; the juror told the court this would not affect their ability to be impartial.

These five jurors served on the jury panel.

¶6 Jurors 5, 6, 7, 9, and 16 were selected as the remaining members of the panel. The court brought in these five jurors (along with Jurors 4, 11, and 17) and asked them collectively whether any of them had heard "any part of a discussion" between Cunnington and his attorney. Of this group of jurors, only Jurors 4, 11, and 17 conveyed that they heard anything. Neither the court nor the parties asked Jurors 5, 6, 7, 9, and 16 individually about anything they might have overheard. Cunnington did not object to the selection of any of these jurors; instead, he affirmatively passed the panel for cause.

¶7 Following a four-day trial, the jury convicted Cunnington as charged, and the court sentenced him to concurrent ten-year prison

4

sentences. Cunnington timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

### A. Inclusion of Jurors Aware of Plea Offer

¶8 Cunnington argues the superior court committed structural error in his case by seating jurors who had overheard the conversation between him, his defense counsel, and his mother. He argues that exposure to information about his rejected plea deal tainted these jurors and rendered them unable to be fair and impartial.

¶9 Typically, when a defendant fails to object to trial error, they cannot obtain appellate relief based on that error unless they demonstrate fundamental error. *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018). This requires the defendant to show (1) trial error occurred, (2) the error was fundamental, and (3) the error resulted in prejudice. *Id.* at 142, ¶ 21. But some trial errors are so profound that they "deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," and whenever such an error occurs, "no criminal punishment may be regarded as fundamentally fair." *State v. Ring*, 204 Ariz. 534, 552, ¶ 45 (2003) (citation omitted and cleaned up). These trial errors are "structural errors," *id.*, and a defendant who shows structural error occurred is not required to show prejudice, *State v. Tucker*, 231 Ariz. 125, 131, ¶ 7 (App. 2012). Before a defendant can obtain relief either under structural or fundamental error, they must first show that error occurred. *See State v. Diaz*, 223 Ariz. 358, 360–61, ¶ 11 (2010).

¶10 Cunnington argues the superior court erred by seating jurors who had overheard portions of the conversation between him, his mother, and his counsel, because their knowledge that Cunnington rejected a plea "irrevocably tainted" the panel. Under Arizona Rule of Criminal Procedure ("Rule") 18.4(b), "[t]he court, on motion or on its own, must excuse a prospective juror or jurors from service in the case if there is a reasonable ground to believe that the juror or jurors cannot render a fair and impartial verdict." We review a court's determination about whether a juror can be fair and impartial for an abuse of discretion. *See State v. Colorado*, 256 Ariz. 97, 99–100, ¶¶ 10–16 (App. 2023).

¶11 Cunnington has not persuaded us that the superior court erred in seating any juror in his case. He claims the jurors were irrevocably tainted by overhearing the conversation because they then knew Cunnington's mother wanted him to plead guilty. Cunnington believes his

mother's desire for him to take the plea offer necessarily implies she believed Cunnington was guilty. We are not convinced; a defendant may plead guilty to a charged offense for various reasons other than actual guilt. *State v. Stewart*, 131 Ariz. 251, 254 (1982). That a juror may have learned of Cunnington's mother's request does not, alone, render that juror biased.

¶12 Moreover, when asked by the court, no member of Cunnington's jury conveyed that they would be unable to act fairly and impartially based on any portion of the conversation they overheard. The record contains no evidence that any of the seated jurors gave the court a reason to question their assurances of impartiality, and considering the considerable deference trial judges have in assessing a juror's credibility, *see State v. Puga*, 259 Ariz. 229, 234–35, ¶ 28 (App. 2025), it is not apparent the court erred in seating those jurors. No juror gave the court reasonable grounds to conclude that they would be somehow unable to serve as a fair and impartial juror, and thus the court was not required to sua sponte strike them. *See* Ariz. R. Crim. P. 18.4(b).

¶13 Though he acknowledges no Arizona case has directly addressed what a trial judge should do when jurors learn about a rejected plea, Cunnington cites several cases from other states to support his argument that jurors cannot maintain their impartiality after discovering a defendant considered a guilty plea. *See State v. Thompson*, 813 S.E.2d 59 (W. Va. 2018); *Brooks v. State*, 763 So.2d 859 (Miss. 2000); *Blocker v. State*, 809 So.2d 640 (Miss. 2002); *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000). But these cases are not persuasive in addressing the circumstances presented here.

¶14 In *Thompson*, the trial judge made statements to the jury pool at the start of trial indicating the defendant had decided to plead guilty and thus "probably did everyone a favor by doing the plea . . . because like I said it was a pretty tragic case with some children involved." *Thompson*, 813 S.E.2d at 63. The defendant, however, decided to withdraw his guilty plea and proceed to trial; jury selection resumed the next day with the same jury pool. *Id*. The appellate court reversed the conviction, holding that the trial judge's comments at the beginning of jury selection tainted the defendant's presumption of innocence. *Id*. at 67. The appellate court explained that the judge's comments plainly expressed his opinion "on *the* material fact at trial—[the defendant's] guilt." *Id*. at 64. But in the present case, the superior court imparted no such opinion. Moreover, the *Thompson* court noted that the information regarding the defendant's plea tainted the jury pool "with the knowledge that [defendant] was willing to plead guilty in a case involving multiple casualties." *Id*. at 65. Here, in contrast, nothing

suggested to the jurors that Cunnington was willing to plead guilty; to the contrary, even after an emotional plea from his Mother, Cunnington proceeded to trial.

¶15 In *Blue*, at the beginning of jury selection, the trial judge apologized to the prospective jurors "for their long wait," explaining in part that

> [this] is a situation where the attorney has been speaking to his client about what does he want to do. And when you are on the button like these cases, it's a question. Frankly, an offer has been made by the State or do I go to trial. And he has been back and forth so I finally told him I had enough of that, we are going to trial. You have been sitting out here and this is holding up my docket and I can't get anything done until we know if we are going to trial or not.

*Blue*, 41 S.W.3d at 130. An appellate court determined that the judge's comments "tainted appellant's presumption of innocence in front of the venire," and thus fundamental error occurred, requiring reversal. *Id.* at 132-33. Though the prejudicial impact of trial judges sharing their impressions with potential jurors about a defendant's guilt based on rejection of a plea offer is obvious, nothing of the sort happened in Cunnington's trial.

¶16 Similarly, *Brooks* presents a substantially different set of facts. During closing arguments in that case, the prosecutor informed the jury the defendant had been offered a plea and refused to take it, arguing the defendant "just didn't take it. He took a chance rolling the dice. He's relying on you to turn him loose when he knows he's guilty . . . ." *Brooks*, 763 So.2d at 862–63, ¶ 8. Given that the prosecutor "sought to have the jury draw negative inferences from the fact that [the defendant] chose to exercise his fundamental constitutional right to a trial by jury," the appellate court determined the prosecutor's statements created reversible error. *Id.* at 864, ¶¶ 13–14. As with the other cases we have discussed, the error went well beyond potential jurors merely discovering that a defendant had rejected a plea offer.

¶17 The facts in *Blocker v. State* are somewhat more analogous to the present case; there, a juror had been allowed to remain on the jury despite having read a newspaper article about the case suggesting some kind of plea bargaining had begun. *Blocker*, 809 So.2d at 643, ¶ 11. Critically, and much like Cunnington's case, the jurors assured the judge they could remain fair and impartial, including the juror who read

7

the newspaper article; on that record, the Mississippi Supreme Court did not find reversible error. *Id.* at 644, ¶ 15. We see no reason to conclude differently.

**¶18** Cunnington also tries to analogize his case to *State v. Miller*, 178 Ariz. 555 (1994), in which a dismissed alternate juror left a note on another juror's windshield that expressed the alternate juror's opinion that the defendant was guilty. *Id.* at 557. Acknowledging the principles that "a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury," and that "[a]ny private communication, contact or tampering with a juror gives rise to a strong presumption that the verdict has been tainted," our supreme court remanded for an evidentiary hearing to determine what effect this note may have had on the jury's verdicts. *Id.* at 557, 560. According to Cunnington, *Miller* holds that a verdict is tainted "when the jury learns an outside opinion on the defendant's guilt." But *Miller* did not hold that the note automatically tainted the verdict; instead, the case was remanded for the trial court to determine whether the communication prejudiced the verdict. *Id.* at 560. Here, the superior court properly inquired as to what the jurors had overheard and received assurances during voir dire that those selected would maintain impartiality. Cunnington has not shown the court committed error.

### B.     Failure to Question Jurors

**¶19** Cunnington argues the court also committed structural error by failing to meaningfully assess whether the five other jurors (Jurors 5, 6, 7, 9, and 16) had overheard any part of the conversation between Cunnington, his mother, and his counsel, and that as a result the court failed to exercise its discretion during jury selection.

**¶20** Cunnington is incorrect in claiming the court failed to question these jurors. The court asked all these jurors whether they heard "any part of a discussion between defense counsel and Mr. Cunnington." Cunnington has not shown why these jurors' denials of hearing any such conversation were insufficient.[1] He argues this questioning failed to meet the requirements of Rule 18.5(f), which obligates the court to "conduct a

---

[1] In his reply brief, Cunnington suggests the court's question was deficient because it did not specifically reference Cunnington's mother. Yet all jurors who indicated they did hear something after being asked the same question (Jurors 4, 11, and 17) seemed to understand what conversation the court referred to without issue.

thorough oral examination" of prospective jurors. But nothing in the rule suggests a court is required to further inquire about a juror's otherwise conclusive response to the court's question. And although Cunnington suggests that the court's failure to question these jurors has made it impossible to know what they may have heard, he had every opportunity to make that record in the superior court. That he failed to do so does not mean he is entitled to automatic reversal on appeal. Cunnington has not shown the court committed any error, structural or otherwise, in conducting voir dire and addressing the hallway conversation.

### C.        Other Jury Selection Concerns

**¶21**        Cunnington's final argument involves several other concerns with jury selection. As Cunnington acknowledges, because he did not raise any objection during jury selection, we review for fundamental, prejudicial error only. *See Escalante*, 245 Ariz. at 142, ¶ 21. To demonstrate prejudice, Cunnington must show that absent any alleged error the jury could have reached a different verdict. *Id.* at 144, ¶ 29. This "could have" standard is not easily met, and is an objective inquiry that "necessarily excludes imaginative guesswork." *Id.* at ¶ 31.

**¶22**        Cunnington argues the superior court should not have sent the jury out into the hallway "without any instruction or limitation" telling the jurors not to discuss the conversation they may have overheard, and that it was "unknown which details were discussed and what additional information was conveyed to the panelists who did not hear the original conversation." Had Cunnington timely objected, the record might support his argument. Instead, his argument relies essentially on speculation that prejudicial information was spread among the jurors. Speculation, however, is not enough to establish fundamental, prejudicial error. *See State v. Lowery*, 230 Ariz. 536, 540, ¶ 10 (App. 2012).

**¶23**        Cunnington also argues the court's decision to strike certain jurors (Jurors 13, 14, and 19) and allow other jurors to be seated lacked a "rational basis to distinguish between the prospective jurors." But both the parties and the court made it clear that for the three excluded jurors, at least part of the rationale for excluding them was the fact they had learned of a specific sentence Cunnington could face if convicted. It would have been improper for the jury to hear or consider such information. *See State v. Koch*, 138 Ariz. 99, 105 (1983) ("[A] trial court's jury instructions generally should not touch on the subject of punishment except to advise the jury not to consider it."); *State v. Jones*, 197 Ariz. 290, 305–06, ¶ 38 (2000).

**¶24** Finally, Cunnington claims the court improperly rehabilitated Juror 4 by explaining to the juror that Cunnington could not simultaneously accept the plea and go to trial. Even if this exchange constituted impermissible rehabilitation, Cunnington has not shown prejudice because Juror 4 was ultimately selected as an alternate juror. *See State v. Bolivar*, 250 Ariz. 213, 224, ¶¶ 34–35 (App. 2020) (finding alternate juror's exposure to article relating to case did not affect verdict); *State v. Moore*, 222 Ariz. 1, 18, ¶ 99 (2009) (restricting voir dire was harmless as to jurors that did not take part in deliberations).

## CONCLUSION

**¶25** We affirm.

